IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ERIC SCOTT ESSARY,<br>    *Plaintiff*, | § § § § § § § § § § § | |
| v. | | Case No.: |
| R.J. ALUMINUM, LLC,<br>    *Defendant*. | | |

**COMPLAINT**

Plaintiff Eric Scott Essary ("Essary") accuses his former employer, Defendant R.J. Aluminum, LLC ("Company") of violating Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12111 – 12117 ("ADA"), in at least three different ways.

**Parties**

1.  Plaintiff Eric Scott Essary ("Essary") is an individual who --

    A.   was a citizen and resident of the State of Texas at all times in Year 2020.

    B.   was a citizen and resident of the State of Texas at all times in Year 2021.

    C.   has been a citizen and resident of the of the State of Texas at all times in Year 2022.

2.  Defendant R.J. Aluminum, LLC ("Company") –

    A.   is currently an active Indiana corporation.

    B.   currently has its principal place of business – *i.e.*, the place where its officers direct, control and coordinate its activities – at 365 South Post Road, Indianapolis, Indiana.

    C. had it principal place of business – *i.e.*, the place where its officers directed, controlled and coordinated the Company's activities – at all times in Indianapolis, Indiana during calendar year 2021.

    D. had it principal place of business – *i.e.*, the place where its officers directed, controlled and coordinated its activities – at all times in Indianapolis, Indiana during calendar year 2020.

  3. The Company –

    A. currently has 15 or more employees.

    B. had 15 or more employees in each of 20 or more calendar weeks in 2021.

    C. had 15 or more employees in each of 20 or more calendar weeks in 2020.

  4. The Company –

    A. currently has fewer than 201 employees.

    B. had fewer than 201 employees in each of 20 or more calendar weeks in 2021.

    C. had fewer than 201 employees in each of 20 or more calendar weeks in 2020.

  5. The Company –

    A. currently has fewer than 101 employees.

    B. had fewer than 101 employees in each of 20 or more calendar weeks in 2021.

    C. had fewer than 101 employees in each of 20 or more calendar weeks in 2020.

6. The Company issued, or caused to be issued, a "Form W-2 Wage and Tax Statement" to Essary for Year 2020.

7. The Company issued, or caused to be issued, a "Form W-2 Wage and Tax Statement" for Year 2020 in which it identified Essary's "[e]mployer's name" as follows – "R. J. Aluminum, LLC."

8. The Company does not have a registered agent listed with the Secretary of the State of Texas.

    A. However, service of the Company can still be accomplished by following Texas state law for serving a summons in an action brought in courts of general jurisdiction of the State of Texas. FED. R. CIV. P. 4(c)(1).

        (i) According to Texas state law, the Texas Secretary of State is the agent for service of process of a nonresident who engages in business in Texas, but who has not designated or maintained a resident agent for service of process. TEX. CIV. PRAC. & REM. CODE § 17.044(a)(1). Accordingly, service upon the Company may be made by personal delivery of a copy of the process to the Texas Secretary of State or an employee in his office.

        (ii) Pursuant to TEX. CIV. PRAC. & REM. CODE § 17.045(a), Essary serves the Texas Secretary of State with duplicate copies of process. The full name and address of the home office of the Company is as follows: **R.J. Aluminum, LLC, 365 South Post Road, Indianapolis, Indiana 46219**.

        (iii) Pursuant to TEX. CIV. PRAC. & REM. CODE § 17.045(b), the person in charge of the Company's business or, alternatively, a corporate officer of Defendant, is **Steve Ramey**. He is the **Owner** of the Company. Essary requests that the Texas Secretary of State immediately send to Ramey the copy of process by registered mail or by certified mail, return

receipt requested. *Id.* at § 17.045(d).

## Jurisdiction

9. This Court has original subject matter jurisdiction over this action because Essary's ADA claims all present a federal question. *See* 28 U.S.C. § 1331.

10. This Court has personal jurisdiction, both specific and general, over the Company because the Company conducts business in Texas, Essary's ADA claims all arose in Texas, and the Company is amenable to service by this Court.

## Venue

11. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to Essary's ADA claims occurred here. *See* 28 U.S.C. § 1391(b)(2).

## Material Facts

12. The Company is engaged in the business of distributing and fabricating windows and architectural aluminum building products and glazing window systems for the commercial construction industry. The Company operates locations in Indiana and Texas.

13. The Company currently operates an office at the following location – 234 Enterprise Boulevard, Emory, Rains County, Texas 75440 (hereinafter "Emory Office").

   A. The Company operated the Emory Office at all times in year 2021.

   B. The Company operated the Emory Office at all times in year 2020.

14. In September 2020, the Company interviewed Essary for employment.

   A. This interview took place at the Emory Office.

   B. The following people interviewed Essary face-to-face on behalf of the Company – Messrs. Ben Wedeking and Donny Walker.

15.     During the interview referenced in paragraph 14 *supra,* Essary informed Wedeking and Walker about a car accident he had suffered in December 2017.

A.     This included Essary letting Wedeking and Walker know that he had shattered his left ankle from his heel to his tibia bone.

B.     This included Essary letting Wedeking and Walker know that his left ankle continues to swell and stiffen whenever he stands or walks too much.

C.     This included Essary letting Wedeking and Walker know that he could not work more than forty hours per workweek.

16.     Notwithstanding Essary's disclosures to the Company about being in a car accident in December 2017, as well as the impact of that accident on his left ankle, the Company chose to hire Essary.

A.     Essary's date of hire with the Company was September 14, 2020.

B.     The Company hired Essary to work as an "Assember."

C.     Between September 14, 2020 and March 2021, the Company did not require Essary to work more than **mid-forty hours** per workweek.

17.     In March 2021, Walker ceased working for the Company.

18.     In March 2021, the Company replaced Walker with a certain Mr. Marcus Castillo.

A.     Notwithstanding Essary's disclosure to the Company, made in September 2020, about being in a car accident in December 2017, as well as the impact of that accident on his left ankle, Castillo chose to increase Essary's hours to **fifty-plus hours** per workweek.

B.     Castillo then told Essary that the Company was going to increase Essary's hours to sixty-plus hours per workweek.

C.     Essary responded by telling Castillo he could not work that many hours.

   D. The Company replied by telling Essary to go home and not work at all until he produced a doctor's note.

 19. In compliance with the Company's instructions set forth in paragraph 18.D, Essary obtained a doctor's note on May 13, 2021.

   A. A true and correct copy of this note is attached hereto as **Exhibit A.**

   B. Essary went to the Emory Office and tendered **Exhibit A** to Wederking.

    (i) Essary did this on the day after he obtained **Exhibit A**.

 20. At no time did Wederking or anyone else with the Company challenge the authenticity of **Exhibit A**.

 21. Wedeking met with Essary on May 18, 2021.

   A. This meeting took place at the Emory Office.

   B. Castillo was also present during this meeting.

   C. During this meeting, the Company, by and through Wedeking, informed Essary it was terminating his employment, effective immediately.

   D. During this meeting, Essary watched Wedeking sign the one-page document attached as **Exhibit B**.

 22. On June 9, 2021, Essary filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

 23. On June 9, 2021, Essary filed a Charge of Discrimination with the EEOC.

   A. Upon receipt, EEOC assigned the following number to Essary's Charge of Discrimination: 450-2021-04581 (hereinafter "Charge").

   B. The Charge reads in pertinent part as follows – "*I believe that Respondent [i.e., the Company]* ***failed to accommodate me****, and then it* ***discharged me****, because I am 'actually'*

*disabled and/or 'regarded as' or 'perceived as' disabled, as those terms are used in the Americans with Disabilities Act[.]*" (bold font and underline in the original).

24. The Company received a copy of the Charge from the EEOC.

25. The Company responded to the Charge by transmitting a document to EEOC.

    A. The Company did this on July 26, 2021.

    B. The Company called its document a "position statement."

    C. The Company's document consists of more than forty-three pages.

    D. The Company's document was signed by –

> Steve Ramey
> Owner

    E. The Company transmitted its document to EEOC via email.

26. On December 16, 2021, EEOC, by and through Kelly Robinson, and for Belinda F. McCallister, District Director of EEOC, signed a document titled "Notice of Right to Sue (Issued on Request)."

27. The Company, by and through "Dana Pitts," received the document from EEOC referenced in paragraph 26.

28. Due to the Company's conduct, including the foregoing, Essary has suffered economic losses, and he will likely continue to suffer such losses in the future.

29. Due to the Company's conduct, including the foregoing, Essary has suffered future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and he will likely continue to suffer such losses in the future.

## COUNT ONE:
### ADA; Discrimination; Failure to Accommodate

30. Essary re-alleges and incorporates by reference all allegations set forth in

paragraphs 12 through 29.

31. The Company violated the ADA by failing to make "reasonable accommodations" to Essary's "known physical … limitations" – specifically, the arthritis in Essary's left ankle. *Id.* at § 12112(b)(5)(A). Essary is a qualified individual with a disability; the Company knew of Essary's disability and its consequential limitations since the day it interviewed him in September 2020; and the Company failed to make reasonable accommodations.

32. Essary has satisfied all conditions precedent to the filing of this Count One.

33. Essary seeks all relief that is available to him under the ADA. This includes but is not limited to the following:

    A. an award of wages and employment benefits in the past – "back pay" – plus wages and employment benefits in the future – "front pay" (if reinstatement is found to be inappropriate) -- and other appropriate equitable relief.

    B. compensatory damages in the past, including damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, as well as compensatory damages in the future, including damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

    C. punitive damages as the Company engaged in discriminatory practices with malice or reckless indifference to Essary's federally protected rights.

    D. all interest lawfully available to Essary.

    E. an award of attorney fees pursuant to 42 U.S.C §12205 if/when Essary is found to be a "prevailing party," as well as reimbursement for Essary's expert witness fees as part of his costs. *Id.*

## COUNT TWO:
## ADA; Discrimination; Discharge; Actual Disability

34. Essary re-alleges and incorporates by reference all allegations set forth in paragraphs 12 through 29.

35. The Company violated the ADA by discharging Essary, who was "qualified" for his job as an Assembler, because of/based on his actual disability – namely, the arthritis in his left ankle. 42 U.S.C. § 12112(a). *See also id.* at § 12102(1)(A) (defining actual disability).

36. Essary has satisfied all conditions precedent to the filing of this Count Two.

37. Essary seeks all relief that is available to him under the ADA. This includes but is not limited to the following:

   A. an award of wages and employment benefits in the past – "back pay" – plus wages and employment benefits in the future – "front pay" (if reinstatement is found to be inappropriate) -- and other appropriate equitable relief.

   B. compensatory damages in the past, including damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, as well as compensatory damages in the future, including damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

   C. punitive damages as the Company engaged in discriminatory practices with malice or reckless indifference to Essary's federally protected rights.

   D. all interest lawfully available to Essary.

   E. an award of attorney fees pursuant to 42 U.S.C §12205 if/when Essary is found to be a "prevailing party," as well as reimbursement for Essary's expert witness fees as part

of his costs. *Id.*

## COUNT THREE:
### ADA; Discrimination; Discharge; Perceived. "Regarded as" Disability

38. Essary re-alleges and incorporates by reference all allegations set forth in paragraphs 12 through 29.

39. The Company violated the ADA by discharging Essary, who was "qualified" for his job as an Assembler, because of/based on the Company regarding Essary as having a disability – namely, the arthritis in Essary's left ankle. 42 U.S.C. § 12112(a). *See also id.* at 42 U.S.C. § 12102(1)(C) (defining "regarded as" disability).

40. Essary has satisfied all conditions precedent to the filing of this Count Three.

41. Essary seeks all relief that is available to him under the ADA. This includes but is not limited to the following:

    A.  an award of wages and employment benefits in the past – "back pay" – plus wages and employment benefits in the future – "front pay" (if reinstatement is found to be inappropriate) -- and other appropriate equitable relief.

    B.  compensatory damages in the past, including damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, as well as compensatory damages in the future, including damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

    C.  punitive damages as the Company engaged in discriminatory practices with malice or with reckless indifference to Essary's federally protected rights.

    D.  all interest lawfully available to Essary.

E.  an award of attorney fees pursuant to 42 U.S.C §12205 if/when Essary is found to be a "prevailing party," as well as reimbursement for Essary's expert witness fees as part of his costs. *Id.*

## Jury Demand

42. Essary demands a jury on all issues so triable. *See* FED. R. CIV. P. 38.

## Request for Relief

WHEREFORE, Plaintiff Eric Scott Essary asks that Defendant R.J. Aluminum, LLC ("Company") appear and answer, and that on trial of this action Essary have final judgment against Company as set forth hereinabove, and for all such other and further relief to which Essary is justly entitled.

Dated: January 18, 2022

Respectfully submitted,

By: ____/s/_____

**Wade A. Forsman**
State Bar No. 07264257
P.O. Box 918
Sulphur Springs, TX 75483-0918
Tel.: 903.689.4144 East Texas
Tel.: 972.499.4004 Dallas Fort Worth
Fax: 903.689.7001
wade@forsmanlaw.com

**Attorney for Plaintiff Eric Scott Essary**